July 30, 2026

**Supreme Court**

No. 2024-219-Appeal.
(PC 17-1105)

Yohaira Galindez                    :

v.                                              :

Rhode Island Public Transit Authority et :
            al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Yohaira Galindez         :

v.                    :

Rhode Island Public Transit Authority et : al.

Present: Suttell, C.J., Robinson, Lynch Prata, and Indeglia (ret.), JJ.

## O P I N I O N

**Justice Lynch Prata, for the Court.** The plaintiff, Yohaira Galindez (Galindez), appeals from a judgment entered following a jury verdict in favor of the defendant, Rhode Island Public Transit Authority (RIPTA). Galindez sets forth eleven assignments of error; namely, that the trial justice erred in: six evidentiary rulings; allowing RIPTA to amend its answer at the eleventh hour; dismissing a juror; rendering a prejudicial answer to a juror question; giving an improper jury instruction; and improperly denying her motion for new trial. For the reasons set forth herein, we affirm the judgment of the Superior Court.

## Facts and Travel

We recite only the facts necessary to address the issues on appeal. On March 9, 2017, Galindez filed a complaint in the Superior Court against RIPTA, alleging

that she had sustained injuries while riding a RIPTA bus on July 1, 2016.[1]  Galindez alleged that her injuries were caused by the bus driver's negligent operation of the vehicle.  As recompense, Galindez sought damages for her medical bills and pain and suffering, as well as costs and attorney's fees.  RIPTA filed an answer, denying the substantive allegations contained in Galindez's complaint.  After several years of motions and discovery, a jury trial commenced on November 30, 2023.

Testimony began on December 1, 2023.  Galindez testified first, describing the events of the alleged incident.  Galindez stated that on May 29, 2016, she, her four children, and her twin sister took the A-3 RIPTA bus to Oakland Beach.  Galindez stated that throughout the ride, the bus driver kept turning to speak with a passenger who stood to his right, and that based on her experience on the RIPTA bus, it seemed the bus was operating at a higher rate of speed than usual.  Galindez testified that as the RIPTA bus was traveling in the right lane, a gray vehicle crossed over in front of the bus from the left lane.  Galindez testified that because the bus driver was speeding and talking, he had to abruptly apply the brakes three times as the gray car entered the right lane.  The abrupt braking allegedly caused Galindez to hit her shoulder on the seat in front of her and then on a bar behind her.

---

[1] Although the complaint alleged the incident took place on July 1, 2016, the parties later determined that the incident occurred on May 29, 2016.

After the incident, the bus driver stopped the bus and called a supervisor, who arrived on scene. Galindez never spoke to the supervisor. After the supervisor departed, the bus driver asked Galindez if she needed an ambulance. Galindez declined and, trying not to let her injuries ruin her children's outing, continued to the beach. However, once the family arrived at the beach, Galindez realized her pain was severe, so she and her family took another bus back home.

Galindez did not immediately seek treatment, but after a few days of increasing pain, she went to the emergency room at Rhode Island Hospital. There, a doctor diagnosed Galindez with "chest concussions" and a shoulder fracture. The doctor referred Galindez to an orthopedic specialist, who developed a treatment plan for Galindez, which included shots and physical therapy. Galindez described the treatment as difficult and painful. Galindez testified that although she had completed several months of physical therapy, her life was never the same after the incident. On cross-examination, RIPTA elicited that for years prior to the incident Galindez suffered from depression and chronic pain due to arthritis that affected her daily life.

Next, the bus driver, Milton Luna (Luna), testified. Luna testified that he had been employed as a RIPTA bus driver for about twenty years. Luna testified that, on the date of the incident, he was not speaking with a passenger during the ride and that he was operating the bus at a safe speed. Luna explained that, as he was driving the bus a gray car cut him off, so he stopped the bus safely to avoid an accident.

Luna also testified that he was unable to get the gray car's license plate number because the driver sped off right after the incident. Luna stated that, after the incident he spoke with Galindez, who explained that she had been injured. Galindez declined Luna's offer to call for a rescue. With approval from a RIPTA dispatcher, Luna continued his route. Upon his return to the station, Luna completed a report detailing the incident.

At the conclusion of Luna's testimony, both parties rested. The trial justice dismissed the jury for the day and then discussed proposed jury instructions with the attorneys. The next day, the trial justice issued her instructions and sent the jurors to deliberate. During deliberations, the jury sent a note to the trial justice expressing some confusion regarding the doctrine of spoliation. Outside the presence of the jurors, the trial justice and counsel discussed how the trial justice should respond. The trial justice ultimately delivered a supplemental instruction which clarified the standard the jury should apply. The jury thereafter continued its deliberations and less than an hour after the supplemental instruction returned a verdict in favor of RIPTA.

Subsequently, Galindez filed a motion for new trial and a premature, albeit timely, notice of appeal to this Court.[2]  Thereafter, the trial justice issued a bench decision denying the motion for new trial.

## Discussion

On appeal, Galindez sets forth a myriad of issues.  We discuss each *seriatim*. We note at the outset that several of these issues, as indicated *infra*, are waived. Under this Court's well-established raise-or-waive rule, "simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue." *Barnes v. Rhode Island Public Transit Authority*, 242 A.3d 32, 36-37 (R.I. 2020) (brackets omitted) (quoting *Fisher v. Applebaum*, 947 A.2d 248, 252 (R.I. 2008)).

## Evidentiary Rulings

"[T]his Court reviews evidentiary rulings under an abuse of discretion standard." *State v. Rivera*, 253 A.3d 851, 855 (R.I. 2021) (quoting *State v. Jones*, 242 A.3d 47, 51 (R.I. 2020)).  "[W]e are disinclined to perceive an abuse of discretion so long as the record contains some grounds for supporting the trial

---

[2] Galindez filed both a motion for new trial and notice of appeal on December 19, 2023.  The trial justice did not render a bench decision on the motion for new trial until several months later, on May 17, 2024.  The case was then transmitted to this Court on July 19, 2024.  We then remanded for the entry of final judgment, which occurred on July 28, 2025.

justice's decision." *Id.* at 856 (deletion omitted) (quoting *Ims v. Town of Portsmouth*, 32 A.3d 914, 926 (R.I. 2011)).

## Impeachment of Statement Not Made by Plaintiff

First, Galindez challenges RIPTA's reliance on "unauthenticated medical records[,]" which, in her view, lacked foundation and authentication as required by G.L. 1956 § 9-19-27. In response, RIPTA contends that § 9-19-27 is inapplicable because Galindez's medical records were utilized for impeachment purposes, not for the purpose of prognosis, diagnosis, or causation. RIPTA also contends that Galindez herself authenticated the documents as being her prior medical records.

Under Rule 901(a) of the Rhode Island Rules of Evidence, evidence must first be authenticated or identified "by evidence sufficient to support a finding that the matter in question is what its proponent claims." R.I. R. Evid. 901(a). "[A]uthentication is not a high hurdle to clear." *O'Connor v. Newport Hospital*, 111 A.3d 317, 323 (R.I. 2015) (quoting *McGovern v. Bank of America, N.A.*, 91 A.3d 853, 860 (R.I. 2014)). In assessing authentication, "trial justices must decide whether there is enough support in the record to conclude that it is 'reasonably probable' that the evidence is what its offeror proclaims it to be. If so, then the evidence's suasive force is for the jury to decide." *Id.* (brackets and deletion omitted) (quoting *State v. Oliveira*, 774 A.2d 893, 926 (R.I. 2001)).

During trial, RIPTA utilized Galindez's medical records to impeach her testimony that she had never had shoulder issues prior to the incident. Defense counsel asked Galindez if she had been treated by a Dr. Katarzyna Gilek-Seibert on April 14, 2016, which Galindez answered in the affirmative. Galindez conceded that, as reflected in the medical record, she had been treated for shoulder issues, but attested that her prior pain had to do with her arthritis and was different from the pain associated with her fracture.

Section 9-19-27(b), states:

> "In any proceeding commenced in any court, commission, or agency, an itemized bill and reports, whether originating within this state or any other state, including hospital or health care facility, medical records, relating to medical, dental, hospital services, prescriptions, or orthopedic appliances rendered to or prescribed for a person injured, and/or any report of any examination of the injured person, including, but not limited to, hospital medical records and written statements made by the physician or dentist whether contemporaneous with the treatment or not, subscribed and sworn to under the penalties of perjury by the physician, dentist, or authorized agent of the hospital or health care facility rendering the services or by the pharmacist or retailer of orthopedic appliances, shall be admissible as evidence of the fair and reasonable charge for the services and/or the necessity of the services or treatment, the diagnosis of the physician or dentist, the prognosis of the physician or dentist; the opinion of the physician or dentist as to proximate cause of the condition so diagnosed, and the opinion of the physician or dentist as to disability, incapacity or permanency, if any, proximately resulting from the condition so diagnosed."

We agree with RIPTA that § 9-19-27 is wholly inapplicable here, and we reject Galindez's generalized assertion that "[t]he authentication of medical records as a substitute for live testimony requires strict adherence to * * * § 9-19-27 * * *." We have found no basis in this state's jurisprudence for that proposition, nor does Galindez provide any. The records at issue were not used for any of the purposes enumerated in § 9-19-27; rather the statements were used appropriately for impeachment.

Thus, we need only consider whether the records came in properly under Rule 803(4) of the Rhode Island Rules of Evidence. Rule 803(4) excludes from the rule against hearsay:

> "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, but not including statements made to a physician consulted solely for the purposes of preparing for litigation or obtaining testimony for trial."

We have explained that "[t]he rationale for this exception is 'the patient's strong motivation to be truthful about information that will form the basis of his diagnosis and treatment.'" *Perry v. Alessi*, 890 A.2d 463, 471 (R.I. 2006) (quoting *McKenna v. St. Joseph Hospital*, 557 A.2d 854, 857 (R.I. 1989)).

Here, the statements from Galindez's medical records fall squarely within Rule 803(4). The relevant portion of the record contained Galindez's medical

history, listing pain in her lower back, upper back, neck, and shoulders. Such statements are specifically enumerated in Rule 803(4), and Galindez advances no argument to the contrary in her briefing.

Moreover, Galindez's claim that the records were not authenticated is without merit. The records were authenticated by Galindez herself, who confirmed that she had been treated by the named doctor on the specified date. Galindez's own confirmation that the record was what defense counsel purported it to be clears the low hurdle of authentication. *See O'Connor*, 111 A.3d at 323. We discern no error.

## Spoliation

Second, Galindez asserts that a spoliation instruction was warranted and that the trial justice failed to scrutinize RIPTA's deletion of video footage of the incident. RIPTA posits that "the determination of whether the destruction of evidence was intentional or routine was in the purview of the jury."

During the discussion with counsel about jury instructions, the trial justice determined that, although she "did not believe that [Galindez] had done enough to develop [the spoliation] argument or * * * theory," a letter from a RIPTA attorney, entered as an exhibit at trial, suggested that video of the incident had been taped over, thus warranting a spoliation instruction. The trial justice gave the following instruction:

> "During this trial, you've heard and seen evidence that
> RIPTA failed to preserve or otherwise destroy video from

- 9 -

a camera on the bus in question that recorded the events at issue on May 29, 2016. When evidence is destroyed, we call it spoliation of this evidence. Under certain circumstances spoliation of evidence may give rise to an inference that the destroyed evidence was unfavorable to the position of the party who destroyed it; in other words, the doctrine of spoliation permits the jury to make an inference that the destroyed video evidence would be unfavorable to RIPTA. But that is not conclusive. It is the sole province of you, the jury, to decide whether or not to make an adverse inference.

"Spoliation of evidence may be innocent, or intentional, or somewhere between the two. It may occur along a continuum of fault, ranging from innocence through degrees of negligence to intentionality. Spoliation is the unexplained and deliberate destruction of relevant evidence that gives rise to an inference that the thing destroyed would have been unfavorable to the spoliator. A showing of bad faith is not necessary to permit a spoliation inference, but such a showing will strengthen the inference.

"If you find that, one, the RIPTA bus in question recorded video on May 29, 2016, or, more specifically, that the RIPTA bus recorded video of the incident giving rise to this dispute, and, two, if you find that RIPTA destroyed the video, and, three, that RIPTA did so intentionally, then you are permitted, but you are not required to infer that the jury's consideration of that evidence would have been unfavorable to RIPTA's position in this case.

"In deciding whether the destruction of the May 29, 2016 video was deliberate, you may consider all of the facts and circumstances which were proved at trial and which are pertinent to that item of evidence. You may consider who destroyed it, how it was destroyed, the legitimacy or lack of legitimacy and the reasons given for its destruction, the timing of the destruction, whether the individual destroying the evidence knew the evidence might be

supportive of the opposing party, whether spoliation was intended to deprive the [c]ourt of evidence, and any other facts and circumstances which you find to be true.

"You may also consider the extent to which it has been shown that the spoliated evidence, that is any video from May 29, 2016, would indeed have been unfavorable to RIPTA's position, and if spoliation of the evidence is attributable to careless[ness] and negligence on the part of RIPTA, you may consider whether the carelessness or negligence was so gross to amount to a deliberate act of spoliation."

Galindez contends that a spoliation instruction was warranted but does not acknowledge the indisputable fact that the trial justice did deliver a comprehensive spoliation instruction. Although Galindez characterizes this assignment of error as an erroneous evidentiary ruling, she appears to take issue with the trial justice's spoliation instruction, which this Court reviews *de novo*. *Armour v. Bader*, 316 A.3d 1164, 1173 (R.I. 2024). Our review reveals that the instruction more than sufficiently covered the law of spoliation. *See State v. Threadgill*, 338 A.3d 311, 320 (R.I. 2025); *Ferris Avenue Realty, LLC v. Huhtamaki, Inc.*, 110 A.3d 267, 282-83 (R.I. 2015). We discern no error.

## "Impact of Injuries on Daily Life"

Next, Galindez argues that RIPTA failed to prove by clear affirmative evidence that Galindez knowingly and voluntarily aggravated pre-existing conditions. We note that Galindez's argument on this point is, at best, unclear. Galindez does not point us to any particular facts in the record regarding

- 11 -

post-incident aggravation. Accordingly, we deem this argument waived. *See Giddings v. Arpin*, 160 A.3d 314, 316 (R.I. 2017) (mem.) ("Without belaboring the point, the plaintiff has failed to develop his arguments or provide any facts or law to support the inartfully raised issues.").

### Impeachment with Prior Consistent Statement

Fourth, Galindez contends that prior consistent statements were improperly introduced to bolster a witness's in-court testimony. Notably, Galindez fails to explain to which witness's prior consistent statements she is referring. Galindez's brief does not identify any witness or statement, nor does it include a citation to the record from which we could glean her intention. Accordingly, this issue is waived. *See Broccoli v. Manning*, 208 A.3d 1146, 1149 (R.I. 2019) ("This Court generally deems an issue waived 'when a party simply states an issue for appellate review, without a meaningful discussion thereof.'") (quoting *A. Salvati Masonry Inc. v. Andreozzi*, 151 A.3d 745, 750 (R.I. 2017)).

### Violation of Rules 608 and 403

Next, Galindez alleges violations of Rules 608 and 403 of the Rhode Island Rules of Evidence. Again, Galindez fails to explain to what specific extrinsic evidence she is referring. Because Galindez failed to meaningfully articulate this particular argument, we need not address it. *See Branson v. Louttit*, 213 A.3d 417, 432 (R.I. 2019) ("[W]e will not scour the record to identify facts in support of her

broad claims, and we will not give life to arguments that she has failed to develop on her own.") (brackets omitted) (quoting *Terzian v. Lombardi*, 180 A.3d 555, 558 (R.I. 2018)).

**Impeachment with Medical Records**

Sixth, Galindez again argues that RIPTA failed to authenticate medical records used to impeach her, in violation of Rule 901 of the Rhode Island Rules of Evidence. Galindez also asserts that the medical records constituted inadmissible hearsay evidence, and that the improper admission of those records warrants a new trial. We have addressed this issue *supra*. Galindez also argues that her twin sister's medical records were introduced at trial and misattributed to her.

Galindez fails to direct us to where and how her twin sister's records were introduced at trial. Moreover, Galindez fails to cite any rule or case law in support of her argument that the misattributed evidence unfairly prejudiced her. Had she meaningfully briefed that argument, our review of the record reveals the following: RIPTA posed a single question to Galindez regarding a January 2016 medical record detailing a prior shoulder injury. Galindez responded that the medical record in question belonged to her twin sister, Yahaira Galindez, and that the doctor's office often mixed up their records. Immediately after that response, the trial justice conducted a sidebar with counsel. Plaintiff's counsel contended that he had inadvertently provided the twin sister's record in discovery and that these types of

- 13 -

issues were "the whole reason [he] objected earlier, especially reading medicals into the record for impeachment." Counsel for both parties agreed that the medical record belonged to Galindez's sister and the trial justice subsequently issued a curative instruction. Specifically, the trial justice explained to the jury that the medical record belonged to Galindez's twin sister and was "to be disregarded" because it was "completely irrelevant" and "relates to a different person * * *."

To start, we point out that Galindez produced the misattributed record during discovery. When Galindez clarified on the stand that the record was not hers, RIPTA agreed that the record could not be used. The trial justice then gave a swift and clear curative instruction. *See State v. Burkinshaw*, 271 A.3d 580, 589 (R.I. 2022) ("[I]f the trial justice determines that the prejudice is curable, he or she must issue a timely and effective instruction.") (emphasis omitted) (quoting *State v. LaPlante*, 962 A.2d 63, 71 (R.I. 2009)). The trial justice's instruction was sufficient to dispel any prejudice resulting from the single remark regarding the misattributed record. We discern no error.

**Sudden Emergency**

Next, Galindez challenges RIPTA's "eleventh-hour introduction of the sudden emergency doctrine," arguing that RIPTA's late-stage amendment unfairly prejudiced her and violated principles of procedural fairness. RIPTA contends that the trial justice did not err in allowing the late amendment of its answer to include

- 14 -

the sudden emergency doctrine because Galindez had adequate notice of RIPTA's defense.

On the first day of trial, outside the presence of the jury and prior to the parties' presentation of their cases, the trial justice addressed whether the jury should be instructed on the doctrine of sudden emergency. Galindez asserted that sudden emergency is an affirmative defense, and because RIPTA had not raised it in its answer, the defense could not be raised at trial. In response, RIPTA argued that sudden emergency is not an affirmative defense, and therefore it did not need to be pled in RIPTA's answer to the complaint. Moreover, RIPTA pointed out that, based on a 2018 letter from RIPTA containing the incident report, Galindez had notice from the outset of the case that RIPTA was denying liability for the incident.

Ultimately, the trial justice ruled that the facts supporting the sudden emergency theory had been known to Galindez for years, and that, therefore, there was no prejudice to Galindez in including the sudden emergency instruction. The trial justice then invited RIPTA to orally move to amend its pleadings to include sudden emergency without conceding that it was an affirmative defense, which RIPTA did. Accordingly, at the close of trial, the trial justice gave an instruction on sudden emergency, explaining to the jury that RIPTA advanced the proposition and had the burden of proving by a preponderance of the evidence that the "bus operator was confronted with a sudden emergency." The trial justice defined a sudden

- 15 -

emergency as "a situation or circumstance that calls for immediate action. A sudden emergency is a situation that could not have been anticipated by an ordinarily careful person." Further, she explained:

> "When a person is faced with a sudden emergency not brought about by his or her own conduct, and that the person is required by that emergency to act without sufficient time to determine the best course of action, that person is not held to the same standard or judgment as would be required if he or she had time to pause and deliberate about what to do."

The trial justice then instructed that, "if RIPTA has proven the bus operator was faced with a sudden emergency, the jury must consider how a reasonably prudent bus operator would have acted when suddenly confronted with a same or similar emergency."

A party may amend their pleadings under Rule 15 of the Superior Court Rules of Civil Procedure. "This Court assumes a liberal position with respect to the amendment of pleadings under Rule 15, and 'affords great deference to the trial justice's ruling on a motion to amend.'" *Catucci v. Pacheco*, 866 A.2d 509, 513 (R.I. 2005) (citation omitted) (quoting *Normandin v. Levine*, 621 A.2d 713, 715 (R.I. 1993)). "We have long held both that the decision about whether to permit a party to amend his or her pleading is one that is left exclusively to the sound discretion of the trial justice and that we shall not disturb that decision unless it constitutes an abuse of discretion." *Id.* (quoting *Normandin*, 612 A.2d at 715). "Rule 15(a)

- 16 -

liberally permits amendment absent a showing of extreme prejudice." *Harodite Industries, Inc. v. Warren Electric Corporation*, 24 A.3d 514, 531 (R.I. 2011) (deletion omitted) (quoting *Weybosset Hill Investments, LLC v. Rossi*, 857 A.2d 231, 236 (R.I. 2004)). "[T]o deny a motion to amend because of delay, 'the trial justice must find that such delay creates substantial prejudice to the opposing party.'" *Lomastro v. Iacovelli*, 56 A.3d 92, 96 (R.I. 2012) (brackets omitted) (quoting *Wachsberger v. Pepper*, 583 A.2d 77, 79 (R.I. 1990)).

Galindez can demonstrate no such prejudice. Although RIPTA did not move to amend until the eve of trial, Galindez had notice at least from 2017 of Luna's position that he braked because another vehicle abruptly cut in front of him. The facts adduced during years-long discovery put Galindez on notice of RIPTA's theory of the case, that Luna stopped the bus in response to another driver's sudden actions. Considering that Galindez had ample notice of RIPTA's theory of the case, we fail to see any prejudice despite the eleventh-hour amendment. *See Mikaelian v. Drug Abuse Unit*, 501 A.2d 721, 722-23 (R.I. 1985) (affirming grant of motion to amend "one day prior to the date upon which the case had been noticed or scheduled for trial" where plaintiff failed to demonstrate "extreme prejudice or abuse of discretion"). Accordingly, we perceive no abuse of discretion.

## Dismissal of Juror

Eighth, Galindez argues that the trial justice's dismissal of a sympathetic juror without adequate justification violated her right to a fair trial. RIPTA argues that the trial justice acted within her discretion in excusing the juror based on concerns that the juror needed to leave deliberations early due to childcare issues. RIPTA contends that plaintiff's counsel's objection to the juror's dismissal "was based solely upon pure conjecture that the position of the juror was sympathetic to his client, and not based upon any legitimate legal argument or authority."

Toward the end of the trial a juror, Juror 170, requested to speak with the trial justice. The trial justice then conducted a chambers conference with Juror 170 and the attorneys. Juror 170 explained that she would have to leave early the following day to pick up her husband from a medical appointment and retrieve her children from school. The trial justice explained that there was a chance the trial may resolve in time for Juror 170 to depart early, but that if it did not, she would excuse her. The next day, the trial justice summoned Juror 170 to discuss whether she needed to be excused. Galindez objected to the potential dismissal of Juror 170, explaining that "I think she's sympathetic to my case * * *." Juror 170 affirmed that she had to leave for the day by "1:30, 2:00 max." Accordingly, the trial justice dismissed Juror 170 to avoid any undue burden on Juror 170 and to avoid the rest of the jurors rushing

their deliberations. Even absent Juror 170, seven jurors remained. We discern no error.

We agree with RIPTA that Galindez presents no cogent legal basis in support of her argument that the trial justice erred in excusing Juror 170. Rather, Galindez relies on her supposition that Juror 170 was sympathetic to her case. Before this Court, Galindez cites a slew of cases in support of her argument that the trial justice must have found partiality before excusing Juror 170. We are not persuaded.

"[T]he determination of the disqualification of a juror for cause is left to the discretion of the trial justice." *State v. Montero*, 339 A.3d 1055, 1083 (R.I. 2025) (quoting *State v. Hazard*, 785 A.2d 1111, 1122 (R.I. 2001)); *see State v. Berberian*, 118 R.I. 413, 416-17, 374 A.2d 778, 781 (1977). We deem it axiomatic that "cause" as it relates to excusing jurors, does not always require a showing of bias. There are several factors other than prejudice that may necessitate the dismissal of a juror. For example, the comments to Rule 47 of the Federal Rules of Civil Procedure, which governs the excusal of jurors in the federal context, list sickness or family emergency as appropriate grounds for excusing a juror. Fed. R. Civ. P. 47(c) advisory committee's note to 1991 amendment. Here, the trial justice exercised sound and appropriate discretion in dismissing Juror 170. *See Thornley v. Community College of Rhode Island*, 107 A.3d 296, 303 (R.I. 2014) ("Absent a clear abuse of discretion, we are reluctant to restrain a trial justice's authority to excuse a juror in the midst of

- 19 -

trial before, so to speak, 'the hurlyburly's done, when the battle's lost and won.'")
(brackets omitted) (quoting William Shakespeare, *Macbeth*, act 1, scene 1); *United States v. Johnson*, 117 F.4th 28, 45-46 (2d Cir. 2024); *United States v. Alexander*, 48 F.3d 1477, 1485 (9th Cir. 1995).

Moreover, Galindez fails to articulate any prejudice resulting from Juror 170's dismissal, relying on the purely conjectural suggestion that the juror was sympathetic to her case. *See Hazard*, 785 A.2d at 1122 ("In any event, defendant has failed to show how he was prejudiced by the removal of this particular juror."). Accordingly, we discern no error.

**Prejudicial Answer to Juror Question**

Ninth, Galindez contends that the trial justice's response to a jury question "mischaracterized critical facts surrounding the incident, skewing the narrative presented to the jury." In response, RIPTA argues that the trial justice made no error of law regarding the jury's question as to spoliation of evidence. RIPTA contends that the trial justice merely clarified the instruction but did not change its meaning.

"Our review of jury instructions is *de novo*." *Armour*, 316 A.3d at 1173 (quoting *Mangiarelli v. Town of Johnston*, 289 A.3d 560, 566 (R.I. 2023)). "This Court examines jury instructions in their entirety to ascertain the manner in which a jury of ordinarily intelligent lay people would have understood them." *Mangiarelli*, 289 A.3d at 566 (quoting *Riley v. Stone*, 900 A.2d 1087, 1092 (R.I. 2006)). "We do

- 20 -

not examine single sentences or selective parts of the charge; rather, the challenged portions must be examined in the context in which they were rendered." *Id.* (quoting *Riley*, 900 A.2d at 1092-93).

"In a situation in which a jury poses a question to the trial justice after the commencement of deliberations, due process requires the justice to 'answer the jury's specific questions.'" *State v. Martino*, 642 A.2d 679, 682 (R.I. 1994) (quoting *State v. Collazo*, 446 A.2d 1006, 1013 (R.I. 1982)). "If an inquiry discloses that the jury 'does not understand an element of the offense charged or some other matter of law central to the guilt or innocence of the accused, the justice is obligated to clarify the matter for the jury in a concrete and unambiguous manner.'" *Id.* (quoting *State v. Gomes*, 590 A.2d 391, 394 (R.I. 1991)). "The trial justice may respond by repeating relevant portions of his original charge or by providing a supplemental instruction." *Id.*

During deliberations, the jurors sent a note to the trial justice which read: "Your Honor, if we find that the bus driver was not negligent, but find that RIPTA was deficient in not keeping a copy of the video of this incident, is that evidence of fault?" The attorneys and the trial justice agreed that they should refer the jury to the original spoliation instruction but clarify or simplify the instruction for the jurors. After discussing the matter with counsel and noting Galindez's objection, the trial justice recalled the jury and gave the following instruction:

"The spoliation of evidence may give rise to an inference that the destroyed evidence was unfavorable to the position of the party who destroyed it. In other words, the doctrine of spoliation permits the jury to make an inference that the destroyed video evidence would be unfavorable to RIPTA. In other words, that the video would have supported the plaintiff's version of events. But this is not conclusive.

"If you decide that RIPTA was deficient in not keeping a copy of the video, then you may decide to infer, but you are not required to infer, that the video supports plaintiff's testimony. If you make this inference, that is a factor that you may, but are not required to consider, when deciding whether or not the bus operator was negligent in this case.

"I know that this can be a little confusing. I urge you to think about the answer that I have just given you and to go back and reread carefully the instruction on spoliation in the jury instructions."

Our review of the trial justice's response to the jury question reveals no error. The trial justice merely restated the law. The trial justice in no way altered the meaning of the prior instruction and her response to the jurors' question was consistent with the law. *See Threadgill*, 338 A.3d at 320 ("[T]he doctrine of spoliation *merely permits* an inference that the destroyed evidence would have been unfavorable to the despoiler, but does not make that inference conclusive.") (quoting *State v. Barnes*, 777 A.2d 140, 145 (R.I. 2001)).

Moreover, less than an hour after the trial justice's supplemental response, the jury returned a verdict in favor of RIPTA, evidencing that the jurors' confusion had been dispelled. *See Martino*, 642 A.2d at 682 ("Indeed, that the jury returned its

- 22 -

verdict within an hour of this inquiry indicates that any putative confusion in the minds of the jurors had been effectively clarified."). Contrary to Galindez's assertion, we perceive no mischaracterization of facts or skewing of the narrative. Accordingly, we discern no abuse of discretion.

**Improper Jury Instruction**

Tenth, Galindez argues that the trial justice's jury instruction misstated RIPTA's duty of care. Specifically, Galindez argues that as a common carrier RIPTA has a heightened duty of care, and that the trial justice's failure to instruct the jury to that effect necessitates a new trial. RIPTA argues that because Galindez did not raise this issue in her motion for new trial, the issue is waived.

"Errors of law not first presented to the trial justice in a jury tried case in a motion for new trial will not be permitted to be later raised in this Court for the first time on appeal." *Amica Mutual Insurance Company v. Tashjian*, 703 A.2d 93, 97 (R.I. 1997). "It is not necessary, however, to itemize at the Rule 59 juncture each and every non-legal error that counsel believes may have been committed during the trial * * *." *Mead v. Papa Razzi*, 899 A.2d 437, 445 (R.I. 2006) (emphasis omitted). Galindez asserts before us an error of law that she did not raise in her motion for new trial, and we therefore deem it waived.

Galindez contends that the relevant inquiry for this Court is not whether the error was raised at the Rule 59 juncture, but rather whether she "protected the record

by making a contemporaneous objection during the trial itself." Even if we agreed with Galindez on that point, we would still deem the issue unpreserved. During the discussion of proposed jury instructions, the trial justice inquired into Galindez's requested instruction regarding "special relationships," noting that counsel for Galindez had not explained what that meant nor provided any law supporting a "special relationship instruction." Counsel for Galindez explained that "in my view, the bus driver has a special relationship to his passengers. * * * So they have a heightened duty of care to make sure their passengers are transmitted safely." The trial justice again inquired whether counsel had any case law to support his proposed instruction, which he answered in the negative. The trial justice declined to give the instruction, noting that without any support, she was unwilling to give that instruction. Ultimately, during her jury instructions, the trial justice explained that "the bus operator in this case must exercise that degree of care that an ordinarily prudent bus operator would exercise under the same or similar circumstances."

"[T]he raise-or-waive rule imposes upon litigants a duty to raise all their claims for relief in the trial court and properly articulate them to a judge for a ruling." *State v. Mosley*, 320 A.3d 942, 976 (R.I. 2024) (quoting *State v. Cahill*, 196 A.3d 744, 753 (R.I. 2018)). We have noted that the raise-or-waive rule "is not some sort of artificial or arbitrary Kafkaesque hurdle." *DeMarco v. Travelers Insurance Company*, 26 A.3d 585, 628 n.55 (R.I. 2011). "[T]he requirement that parties may

raise on appeal only issues which have been presented to the trial court maintains the efficiency, fairness, and integrity of the judicial system for all parties." *Id.* at 629 n.55 (brackets omitted) (quoting *Boyers v. Texaco Refining and Marketing, Inc.*, 848 F.2d 809, 812 (7th Cir. 1988)).

Although Galindez meaningfully argues this issue before us, she failed to do so at the trial court level. Despite the trial justice's multiple requests, Galindez did not provide the trial justice with any legal support for her argument. We decline to find that the trial justice erred in her decision not to grant Galindez's unsupported request. Therefore, even focusing on her contemporaneous objection rather than her motion for new trial, Galindez has failed to preserve this issue for our review. *See State v. Wiggins*, 919 A.2d 987, 990 (R.I. 2007) ("[A]llegations of error committed at trial are considered waived if they were not effectively raised at trial, despite their articulation at the appellate level.") (quoting *State v. Hallenbeck*, 878 A.2d 992, 1018 (R.I. 2005)).

### Procedural Error in Motion for New Trial

Finally, Galindez argues that the trial justice overlooked the substantive issues raised in her motion for new trial, denying the motion based on procedural errors. RIPTA contends that Galindez's motion for new trial was denied based on a substantive analysis, not because of a procedural issue.

- 25 -

"On appeal, a trial justice's decision on a motion for new trial will not be disturbed, assuming he or she performed the appropriate analysis, unless the party challenging that decision can show that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Armour*, 316 A.3d at 1172 (quoting *Baker v. Women & Infants Hospital of Rhode Island*, 268 A.3d 1165, 1168 (R.I. 2022)).

The trial justice rendered a bench decision on the motion for new trial. At the outset, she acknowledged that the parties disputed whether the motion had been timely filed, noting that although plaintiff's counsel had emailed a copy of the motion to defense counsel by the filing deadline, plaintiff's counsel claimed that, as a result of e-filing issues, the motion had not been formally served until four days after the deadline. Realizing the motion had not actually been submitted, plaintiff's counsel filed a motion to enlarge time. The trial justice determined that, contrary to Galindez's assertion, no glitch had caused the delay, but rather human error caused the motion not to be submitted. Despite the trial justice's statement that she was "hard pressed to find that excusable neglect is present here[,]" she exercised her discretion and granted Galindez's motion to enlarge time. The trial justice then moved on, addressing the motion for new trial on the merits, ultimately denying the motion.

Galindez inexplicably overlooks this, arguing that the trial justice denied her motion based only on procedural errors. Our review of the record reveals that the trial justice addressed the substantive errors raised in Galindez's motion for new trial. Galindez does not challenge the trial justice's substantive findings on the motion for new trial, therefore we affirm.

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court. The record may be remanded thereto.

Justice Long did not participate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Yohaira Galindez v. Rhode Island Public Transit Authority et al. |
| **Case Number** | No. 2024-219-Appeal. (PC 17-1105) |
| **Date Opinion Filed** | July 30, 2026 |
| **Justices** | Suttell, C.J., Robinson, Lynch Prata, and Indeglia (ret.), JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa E. Darigan |
| **Attorney(s) on Appeal** | For Plaintiff: Lawrence P. Almagno, Jr., Esq. |
| | For Defendant: Kathleen Wyllie, Esq. |